IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETER PENA, JR. and )<br>DANIEL PENA, )<br> )<br>    Plaintiffs, )<br> )<br>v. )<br> )<br>INTERNATIONAL UNION OF )<br>OPERATING ENGINEERS, )<br>LOCAL 150, AFL-CIO; MIDWEST )<br>OPERATING ENGINEERS PENSION )<br>TRUST FUND; MIDWEST )<br>OPERATING ENGINEERS WELFARE )<br>FUND; STEVEN CISCO; )<br>COLIN M. DARLING; )<br>CHARLES AUGUST; )<br>and OTHER UNIDENTIFIED BUT )<br>KNOWN PARTICIPANTS, )<br> )<br>    Defendants. ) | No.<br><br>FILED: JULY 24, 2008   LI<br>08CV4222<br>JUDGE   HART<br>MAGISTRATE   JUDGE SCHENKIER<br><br><br>Plaintiffs demand trial by jury |

## COMPLAINT

**NOW COMES** the Plaintiffs, Peter Pena, Jr. and Daniel Pena (hereinafter "Plaintiffs", or individually "Plaintiff Peter Pena, Jr." and "Plaintiff Daniel Pena"), by and through their attorneys, The Thollander Law Firm, Ltd. and complains against the Defendants, INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL-CIO (hereinafter "Defendant Local 150"), MIDWEST OPERATING ENGINEERS PENSION TRUST FUND (hereinafter "Defendant Local 150 Pension Fund"), MIDWEST OPERATING ENGINEERS WELFARE FUND (hereinafter "Defendant Local 150 Welfare Fund"), STEVEN CISCO (hereinafter "Defendant Cisco"), COLIN M. DARLING (hereinafter "Defendant Darling"), CHARLES A. AUGUST, a.k.a.

CHUCK AUGUST (hereinafter "Defendant August"), and OTHER UNIDENTIFIED BUT KNOWN PARTICIPANTS, as follows:

## NATURE OF ACTION

1. This action is brought pursuant to the bribing and agreement to fix a grievance involving Plaintiffs and their then employer, A & C Landscaping, Inc. (hereinafter "A & C Landscaping") which is engaged in interstate commerce. Plaintiffs bring this action pursuant to the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961, *et seq.*), and state pendent claim for breach of fiduciary duty.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is conferred and invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 18 U.S.C. 1962(c).

3. Venue is proper in this judicial district under 28 § 1391(b) and (c) because Plaintiffs and all of the Defendants either reside in this district or have their principal place of business in this district, and all events giving rise to Plaintiffs' claims occurred within this district.

## THE PARTIES

4. Plaintiffs are Illinois residents, who resided at all relevant times, in the Northern District of Illinois.

5. Defendant Local 150 is a labor organization purporting to represent members throughout Illinois, Iowa and Indiana, including members working in the Illinois counties of Cook and DuPage, as well as other counties within the Northern District of Illinois. Defendant Local 150 has its principal place of business in Countryside, Illinois.

6. Defendant Local 150 Pension Fund is the pension fund of Defendant Local 150 of which its members and their employers, to and including Plaintiffs and A & C Landscaping, contribute toward the pensions of its members. Defendant Local 150 Pension Fund has its principal place of business in Countryside, Illinois.

7. Defendant Local 150 Welfare Fund is the welfare fund of Defendant Local 150 of which its members and their employers, to and including Plaintiffs and A & C Landscaping, contribute toward the welfare accounts and affairs of its members. Defendant Local 150 Welfare Fund has its principal place of business in Countryside, Illinois.

8. Defendant Cisco is an individual residing in Illinois and at all relevant times pertinent to the matters giving rise to this litigation, an agent and recording correspondence secretary for Defendant Local 150.

9. Defendant Darling is an individual residing in Illinois and at all relevant times pertinent to the matters giving rise to this litigation, a business agent for Defendant Local 150.

10. Defendant August is an individual residing in Illinois and at all relevant times pertinent to the matters giving rise to this litigation, a business agent for Defendant Local 150.

## COUNT I

### (CIVIL RACKETEER INFLUENCE AND CORRUPT ORGANIZATION "RICO" v. ALL DEFENDANTS)

11. Plaintiffs incorporate and reallege paragraphs 1 through 10 as if fully set forth herein.

12. Plaintiffs bring their claims under 18 U.S.C. § 1961, *et seq.*

## Defendants engaged in the pattern of Racketeering Activity

13. On or about July 15, 1998, Plaintiff Peter Pena, Jr. began his employment with A & C Landscaping as a laborer.

14. On or about July 21, 2000, Plaintiff Daniel Pena began his employment with A & C Landscaping as laborer.

15. On or about May 14, 2003, Plaintiff Peter Pena, Jr. was admitted as member of Defendant Local 150.

16. On or about May 14, 2003, Plaintiff Daniel Pena was admitted as member of Defendant Local 150.

17. A & C Landscaping provides certain excavating services, using heavy machinery and equipment to perform the aforesaid services.

18. A & C Landscaping is a Local 150 signatory contractor, employing machine operators whom are union members of Defendant Local 150.

19. A & C Landscaping union employees are entitled to certain hourly wages, benefits and entitlements pursuant to certain Collective Bargaining Agreements with Defendant Local 150, including but not limited to Heavy and Highway and Underground Agreement and the Northern Illinois Material Producers' Association Agreement.

20. At all relevant times pertinent hereto, Plaintiffs were employed by A & C Landscaping as heavy machine operators. Plaintiffs were, and are, members of Defendant Local 150.

21. On or about April 11, 2005, representatives of Defendant Local 150, through an investigation into A & C Landscaping's business practices, uncovered that A

& C Landscaping had been mischaracterizing the activities of Plaintiffs so as to pay a lesser union scale. A & C Landscaping paid Plaintiffs, as union members less than the hourly union wage scale for the work and services actually performed by Plaintiffs.

22.     As a result of Defendant Local 150 investigation into the business practices of A & C Landscaping, Defendant Local 150 did engage the accounting firm of Graff, Ballauer, Blanski & Friedman, P.C., to conduct a wage audit of A & C Landscaping to determine the amounts of past wages due and owing Plaintiffs.

23.     As a result of Defendant Local 150 investigation into the business practices of A & C Landscaping, the fringe benefit arm of Defendant Local 150, Defendant Local 150 Pension Fund and Defendant Local 150 Welfare Fund, did similarly engage the accounting firm of Graff, Ballauer, Blanski & Friedman, P.C., to conduct a fringe benefit audit of A & C Landscaping to determine the amounts of past benefits (health and welfare, pension, apprenticeship and skill improvement, vacation savings, and construction research fund) which may be due and owing to these funds.

24.     On or about September 21, 2005, the accounting firm of Graff, Ballauer, Blanski & Friedman, P.C., concluded its audit determining that Plaintiffs were owed wages of $110,546.46 by A & C Landscaping.

25.     On or about September 26, 2005, the accounting firm of Graff, Ballauer, Blanski & Friedman, P.C., concluded its audit determining that A& C Landscaping owed $52,740.38 in fringe benefits to Defendant Local 150 Pension Fund and Defendant Local 150 Welfare Fund.

26.     On or about July 12, 2005, and on October 5, 2005, Defendant Local 150 filed grievances pursuant to the Heavy and Highway and Underground Collective

Bargaining Agreement (hereinafter "Heavy Highway Agreement") against A & C Landscaping for failure to pay proper wages and fringe benefits.

27. Plaintiffs' work activities with A & C Landscaping were not such activities which would subject Plaintiffs to the terms and conditions of the Collective Bargaining Agreement between Northern Illinois Material Producers' Association and Defendant Local 150.

28. On or about late 2005, Plaintiffs' grievance was submitted to the Joint Grievance Committee.

29. Plaintiffs were unaware of, and were never informed by Defendant Local 150 or Defendant Cisco, that their grievance was submitted to the Joint Grievance Committee for a hearing on said grievances.

30. On or about late 2005 or early 2006, Plaintiffs' grievances were submitted to and went to hearing before the Joint Grievance Committee.

31. The voting participants of Joint Grievance Committee hearing plaintiffs' grievance comprised of, upon information and belief, eight individuals.

32. The Joint Grievance Committee voting members representing labor included, but not limited to, Defendant Cisco, Defendant Darling, and Defendant August.

33. Defendant Local 150, Defendant Cisco, Defendant Darling, Defendant August, and upon information and belief, other known but unidentified individuals, did engage in a scheme to defraud Plaintiffs by soliciting, requesting, demanding, insisting and then accepting a bribe to fix, change, alter the outcome of Plaintiffs' grievance.

34. Defendant Local 150, Defendant Cisco, Defendant Darling, Defendant August, and upon information and belief, other known but unidentified individuals, did

engage in a scheme to defraud Plaintiffs by agreeing to fix, change, and alter the outcome of Plaintiffs' grievance and thereby settle same for payment to Defendant Local 150, Defendant Cisco, Defendant Darling, Defendant August, and upon information and belief, other known but unidentified individuals, to resolve Plaintiffs' grievance.

35. At some point subsequent to Plaintiffs' grievance but prior to February 15, 2006, $25,000.00 was paid either directly or indirectly to Defendant Local 150 through an agent or representative, to fix, change or otherwise impact, to the detriment of Plaintiffs, the outcome of their grievance.

36. Upon information and belief, Dave Snelton acted as the bag man for the delivery of the bribe.

37. At some point subsequent to Plaintiffs' grievance but prior to February 15, 2006, $25,000.00 was paid either directly or indirectly to Defendant Local 150 through an agent or representative, to settle Plaintiffs grievance for a sum less than what was due and owing the Plaintiffs.

38. Defendant Cisco, Defendant Darling, and Defendant August, each agreed to accept and each did ultimately receive not less than $5,000.00 to fix, change or otherwise impact, to the detriment of the Plaintiffs, the outcome of their grievance.

39. Defendants agreed to accept and did ultimately receive monies by way of a bribe to settle Plaintiffs grievance for a sum less than what was due and owing the Plaintiffs.

40. Upon information and belief, there existed a pattern and practice by Defendant Local 150, through its agents and representatives, to and including Defendant Cisco, Defendant Darling, and Defendant August, to cause, steer, direct or otherwise

7

encourage grievances by members to enable, encourage and foster solicitation of bribes and offers to swing, change, fix or otherwise change the outcome of a grievance based upon a bribe or favor as opposed to an impartial resolution of a grievance based upon the facts.

41. On or about December 15, 2005, Defendant Local 150, through its official, Defendant Cisco, did cause the September 20, 2005, audit by Graff, Ballauer, Blanski & Friedman, P.C. to be changed to reflect Plaintiffs were owed $27,637.87.

42. On or about December 15, 2005, Defendant Local 150 Pension Fund and Defendant Local 150 Welfare Fund, through their official, Defendant Cisco, did cause the September 20, 2005, audit by Graff, Ballauer, Blanski & Friedman, P.C. to be changed to reflect that the funds were owed $8,865.29.

43. On or about late 2005 or early 2006, Plaintiffs grievance proceeded to hearing whereupon a purported deadlock occurred.

44. On or about February 15, 2006, Defendant Cisco, on behalf of Defendant Local 150, Defendant Local 150 Pension Fund and Defendant Local 150 Welfare Fund did settle Plaintiffs' grievance with A & C Landscaping for approximately 25% of monies and benefits owed to the Plaintiffs.

45. This settlement was based upon a $25,000.00 bribe received by Defendant Local 150, Defendant Cisco, Defendant Darling and Defendant August.

46. Plaintiffs became aware of the bribe on or about March 7, 2008.

47. Defendants conduct in engaging in a pattern and practice of RICO activity has resulted in Plaintiffs being defrauded of money and benefits and being subjected to materially false and fraudulent pretenses and representations, material omissions and

actions of concealment for the protection of the scheme to defraud Plaintiffs out of wages and benefits.

## The Pattern of Racketeering Activity

48. Defendants fraudulent acts are not isolated, but rather are part of a fraudulent pattern of conduct through which the Defendants encouraged, supported and otherwise participated in a pattern and practice of soliciting, seeking, securing and otherwise accepting bribes to fix, change or otherwise unfairly impact grievances involving Local 150 members, to and including Plaintiffs.

49. The pattern of racketeering activity, as defined by 18 U.S.C. § 1961(1) and (5) consisted of the following acts:

(a) inflating, increasing or supporting the filing of grievances so that demands, requests and offers to fix, change or otherwise unfairly impact grievances involving Local 150 members, to and including Plaintiffs, would occur.

(b) extorted or attempted to extort monies from employers by threatening grievances which could monetarily injury said employers.

(e) accepting bribes to fix, change, alter or otherwise unfairly impact grievances involving Local 150 members, to and including Plaintiffs.

(f) agreeing to accept and accepting bribes to settle grievances, including Plaintiffs' grievance.

(g) utilized the United States mail to further their scheme to solicit, request, and accept a bribe to fix, change, alter or otherwise unfairly impact Plaintiffs' grievance.

**Common Scheme to Defraud**

50. All predicate acts are related and were committed with a common scheme in mind: to fix, change, alter, or otherwise unfairly impact grievances involving Local 150 members, to and including Plaintiffs, for a bribe.

51. Defendants' conduct was part of the scheme to fix, change, alter or otherwise unfairly render a determination of a grievance based upon receipt of money.

52. It was a further goal of the scheme to defraud and cheat Local 150 members from a fair and impartial determination of their grievance, by soliciting, accepting and encouraging bribes to fix, change, alter or otherwise unfairly determine a grievance, to and including Plaintiffs' grievance.

**Enterprise**

53. Defendants were an association, in fact an enterprise as defined by 18 U.S.C. § 1961(4), that was and is engaged in, and its activities affect, interstate commerce (hereinafter "Enterprise").

54. The structure of the Enterprise is comprised of all of the Defendants, of which Defendant Cisco, upon information and belief, was the final policymaker and to which he had command and control.

55. The Defendants were employed by and associated with the Enterprise, which was engaged in and the activities of which affected interstate commerce, unlawfully and knowingly conducted and participated, directly and indirectly, in the conduct of the affairs of that Enterprise through a pattern of racketeering activity through the commission of two or more racketeering acts set forth herein.

56. At all relevant times, Defendants knowingly and willingly associated with the association-in-fact Enterprise comprised of the Defendants and conducted and participated in the conduct of the Enterprise's affairs directly and indirectly by defrauding and extorting money to fix, change, alter or otherwise unfairly impact a grievance, to and including Plaintiffs' grievance for the benefit of the Defendants and the Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §1962.

57. The pattern of racketeering engaged in by the Defendants involved at least two separate but related schemes, carried out from at least 2005 to present and were directed at Plaintiffs and other victims.

58. Defendants' conduct is likely to continue into the present, as it has in the past, and constitute their regular course of business, separate and distinct from the lawful activities of Defendant Local 150.

59. As a direct and proximate cause of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c) Plaintiffs have suffered economic injury including but not limited to the following:

    a) Lost wages;

    b) Lost benefits;

    c) Lost accrual in interest in benefit plans;

    d) Forced to incur expenses as a result of the intentional conduct of the individual named Defendants;

    e) Emotional anguish;

    f) Humiliation; and

    g) Embarrassment.

60. As set forth more fully above, in violation of 18 USC § 1962(d) the Defendants devised, participated in and conspired to engage in a scheme to defraud, attempted extortion and to operate an enterprise through a pattern of racketeering

61. Plaintiff requests a trial by jury.

**WHEREFORE,** Plaintiffs, Peter Pena, Jr. and Daniel Pena, respectfully requests that this Court grant them the following relief:

A. All wages and benefits Plaintiffs would have received but for Defendants' unlawful conduct, including prejudgment interest;

B. Compensatory damages in an amount to be determined at trial to compensate Plaintiffs for the humiliation, anguish, and emotional distress caused by the Defendants' conduct;

C. A permanent injunction enjoining Defendants from engaging in the unlawful conduct complained of herein;

D. Treble or punitive damages as allowed by law to be determined at trial;

E. An award of attorneys' fees, costs, and litigation expenses; and

F. Such other and further relief as this Court may deem just and equitable.

### COUNT II
### (Breach of Fiduciary Duty)

1-46. Plaintiff re-pleads and re-alleges paragraphs 1 through 46 of Count I as paragraphs 1 through 46 of Count II, as if fully set forth herein.

47. Defendants status as Plaintiffs' representative and advocate with respect to employer/employee matters and disputes created a fiduciary relationship between Plaintiffs and Defendants.

48. As a result of the aforementioned fiduciary relationship, Defendants had a duty of loyalty to Plaintiffs. Therefore, Defendants at all times, must refrain from engaging in conduct harmful to Plaintiffs or adverse to Plaintiffs' interest.

49. Defendants breached their fiduciary duty to Plaintiffs in one or more of the following:

   a. soliciting money to fix, change, alter or otherwise unfairly prejudice Plaintiffs from a fair and impartial grievance.

   b. accepting money to fix, change, alter or otherwise unfairly prejudice Plaintiffs from a fair and impartial grievance.

   c. accepting money to fix, change, alter or influence the outcome of Plaintiffs' grievance.

   d. settling Plaintiffs' grievance for less than the actual amount owed to Plaintiffs.

   e. settling Plaintiffs' grievance for less than the actual amount owed to Plaintiffs based upon receipt of a bribe.

50. The acts and actions of Defendants have resulted in their respective breach of their duty of loyalty to Plaintiffs.

51. As a result of the Defendants' breach, Plaintiffs have suffered damage by way of lost wages and benefits.

52. Plaintiffs request a trial by jury.

**WHEREFORE,** Plaintiffs, Peter Pena, Jr. and Daniel Pena, respectfully requests that this Court grant them the following relief:

A.  All wages and benefits Plaintiffs would have received but for Defendants' unlawful conduct, including prejudgment interest;

B.  Compensatory damages in an amount to be determined at trial to compensate Plaintiffs for the humiliation, anguish, and emotional distress caused by the Defendants' conduct;

C.  A permanent injunction enjoining Defendants from engaging in the unlawful conduct complained of herein;

D.  Punitive damages as allowed by law;

E.  An award of attorneys' fees, costs, and litigation expenses; and

F.  Such other and further relief as this Court may deem just and equitable.

*Respectfully submitted,*

Peter Pena, Jr. and Daniel Pena

By: _____
One of their attorneys

The Thollander Law Firm, Ltd.
1048 Ogden Avenue
Suite 200
Downers Grove, Illinois 60515
Phone: (630) 971-9195
Facsimile: (630) 971-9240
A.R.D.C. 6202012

## VERIFICATION

Under penalties as provided by law, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that they verily believes the same to be true.

_____
Peter Pena, Jr.

_____
Daniel Pena

SUBSCRIBED AND SWORN before me
this __24th__ day of __July__, 2008

_____
Notary Public

OFFICIAL SEAL
MARIA P GOSS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/27/12

The Thollander Law Firm, Ltd.
1048 Ogden Avenue
Suite 200
Downers Grove, Illinois 60515
Phone: (630) 971-9195
Facsimile: (630) 971-9240
A.R.D.C. 6202012