IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETER PENA, JR., and DANIEL PENA, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 08 C 4222<br>)<br>) Wayne R. Andersen |
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL-CIO; MIDWEST OPERATING ENGINEERS WELFARE FUND; STEVEN CISCO; COLIN M. DARLING; CHARLES AUGUST; and OTHER UNIDENTIFIED BUT KNOWN PARTICIPANTS, | ) District Judge<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM, OPINION AND ORDER

This case is before the court on the motion of Defendants International Union of Operating Engineers, Local 150, AFL-CIO ("Local 150"), Midwest Operating Engineers Pension Trust Fund ("Pension Fund"), Midwest Operating Engineers Welfare Fund ("Welfare Fund"), Steve Cisco ("Cisco"), Colin M. Darling ("Darling"), and Charles August ("August"), and other unidentified but known participants (collectively "Defendants") to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Plaintiff's federal claim against Defendants is dismissed, and the remaining state law claim is remanded to state court.

### BACKGROUND

On July 24, 2008, Peter Pena, Jr. and Daniel Pena filed a two-count complaint against the

all Defendants. In the first count of their Complaint, Plaintiffs allege a Racketeer Influence Corruption Organization Act (RICO) claim pursuant to 18 U.S.C. § 1961(1) against all Defendants. Cmplt. ¶¶ 1-61. In the second count of the Complaint, Plaintiffs allege that Defendants breached their fiduciary duty of loyalty owed by virtue of their position as Plaintiffs' bargaining representatives. Cmplt ¶¶ 47-52. In this case, the Plaintiffs were employed by A & C Landscaping (A & C), which provides excavating services using heavy machinery and equipment. Cmplt. ¶ 17. Both Plaintiffs were employed as heavy equipment operators and became members of Local 150 on or about May 14, 2003. Cmplt. ¶¶ 15, 16, 20.

On or about April 11, 2005, representatives of Defendant Local 150 allegedly discovered that A & C had been mischaracterizing the work the Plaintiffs performed in order to pay them the lower wages outlined by the Heavy and Highway and Underground Collective Bargaining Agreement ("CBA"). Cmplt. ¶ 21. Local 150, Pension Fund, and Welfare Fund retained an accounting firm to audit A & C's books and records to determine the amounts of wages, which may have been due to the Plaintiffs. Cmplt. ¶¶ 22, 23. The initial audit report stated that A & C underpaid $110,546.46 in wages, and $52,740.38 in fringe benefits over an undisclosed period. Cmplt. ¶¶ 24, 25. Local 150 filed grievances on behalf of the Penas over A & C's failure to pay these amounts pursuant to the CBA. Cmplt. ¶ 26. At some point prior to the hearing on these grievances, an amended audit report was issued that showed A & C only owed $27,637.87 in wages and $8,865.29 in fringe benefits. Cmplt. ¶¶ 41, 42.

These grievances were ultimately submitted to the Joint Grievance Committee ("JGC") in late 2005 or early 2006. Cmplt. ¶¶ 29, 30. The JGC was composed of eight individuals, with Defendants Cisco, Darling, and August representing Local 150. Cmplt. 31-34. The grievance

2

progressed to decision before the full grievance board in late 2005 or 2006, which ended in a deadlock. Cmplt. ¶ 43. After the JGC deadlocked, Defendant Cisco negotiated a settlement with A & C. Cmplt. ¶¶ 43, 44. Plaintiffs allege the reason for the settlement was an elaborate kickback scheme involving Defendants Local 150, Cisco, Darling, and August. Cmplt. ¶¶ 33-45. Plaintiffs allege that they became aware of this scheme and then filed the instant two-count Complaint. Cmplt ¶ 46.

Defendants each filed separate motions to dismiss the federal claims against them. We now turn to those motions.

## **Legal Standard**

In order to survive a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ____, 129 S. Ct. 1937, 1940 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 556). The complaint must be construed in a light favorable to the plaintiff and the court must accept all material facts alleged in the complaint as true. *Jackson v. E.J Branch Corp.*, 176 F.3d 971, 978 (7th Cir. 1999). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly,* 550 U.S. at 555).

Additionally, a complaint must describe the claim with sufficient detail as to "give the

defendants fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint does not need to set forth all relevant facts or recite the law. Rather, all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); see also *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996).

A plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65. Although the pleading requirements under Fed. R. Civ. P. 8 are minimal, a plaintiff can plead himself out of court by including factual allegations that show his legal rights were not invaded. *Pugel v. University of Illinois*, 378 F.3d 659, 667 (7th Cir. 2004).

## Discussion

In separately filed motions, the Defendants move to dismiss the RICO claim asserted against them on the grounds that the Complaint does not adequately allege the elements of a RICO claim. The elements of a RICO violation consist of (1) conduct; (2) of an enterprise; (3) through a pattern; (4) racketeering activity. *Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640, 644 (7th Cir. 1998). It is not enough for a plaintiff simply to allege these elements in boilerplate fashion; instead, a plaintiff must allege sufficient facts to support each element. *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998).

**I.  Plaintiffs do not plead the existence of an "enterprise".**

It is well-established that a "RICO complaint must identify the enterprise." *Richmond,* 52

4

F.3d at 645; *Jennings v. Emry*, 910 F.2d 1434, 1439-40 (7th Cir. 1990). "Enterprise" as defined in the statute includes "any individual, partnership, corporation, association or other legal entity…" 18 U.S.C. § 1961(4). The statute defines the term to include "any union or group of individuals associated in fact although not a legal entity." *Id.* The Seventh Circuit has elaborated on this formulation, characterizing an enterprise as "an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Richmond*, 52 F.3d at 644. An "enterprise" is proved by evidence of an on-going organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Factors which can indicate the existence of a RICO enterprise include "reference to a system of governance, an administrative hierarchy, a joint planning committee, a board, a manager, a staff, headquarters, personnel having differentiated functions, a budget, records, or any other indicator of a legal or illegal enterprise." *Limestone Dev. Corp. v. Vill. Of Lemont*, 520 F.3d 797. 804-05 (7th Cir. 2008). But most importantly, "an enterprise is distinct, separate, and apart from a pattern of racketeering activity: although a pattern of racketeering activity may be the means through which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not what it does." *Jennings*, 910 F.2d at 1441. The enterprise must have a structure and purpose other than the pattern of racketeering activity. *Brown v. County of Cook*, 549 F. Supp.2d 1026, 1030 (N.D. Ill. 2008). Simply stated, "an enterprise is something more than a conspiracy." *Jennings,* 910 F.2d at 1441.

In this case, Plaintiffs do not properly allege the existence an "enterprise." The most plaintiffs say is that the structure is "comprised of all the Defendants, of which Defendant Cisco,

5

upon information and belief, was the final policy maker and to which he had command and control." Cmplt. ¶ 54. Plaintiffs include nothing about the enterprise's hierarchical structure, its organization, how it operated, how or if any of the Defendants communicated, or any details that suggest that a formal or informal structure exists independent of the allegations in the Complaint. Identifying a policy maker is not sufficient to show the existence of an "enterprise." See *Jennings*, 910 F.2d at 1441.

For these reasons, Plaintiffs have not properly alleged the existence of an "enterprise."

## II. Plaintiffs do not satisfy the "pattern" element of the test

Next, "a pattern of racketeering activity consists, at the very least, of two predicate acts of racketeering committed within a ten-year period." *Jennings*, 495 F.3d 466, 472-73 citing, 18 U.S.C. § 1961(5). In this case, Plaintiffs fail to sufficiently plead a pattern of racketeering activity.

Courts evaluate the pattern of allegations under the "'continuity plus relationship' test: the predicate acts must be related to one another (the relationship prong) and pose a threat of continued criminal activity (the continuity prong)." *Id*. at 473. In the Complaint, the Plaintiffs allege "two separate but related schemes." Cmplt. ¶ 57. However, there are no factual allegations in the Complaint regarding a second scheme apart from allegedly soliciting and accepting a bribe to fix a grievance. Although there is no bright line test for what is long enough to establish continuity, the Seventh Circuit has regularly found period of less than one year to be inadequate. *Jennings*, 495 F.3d at 474; *Roger Whitmore's Automotive Services, Inc. v. Lake County*, 424 F.3d 659, 673 (7th Cir. 2005). Moreover, schemes with "a natural ending point" are not sufficient to establish continuity. *Roger Whitmore's*, 424 F.3d at 674. The factual

allegations in the Complaint only establish that the duration of the scheme was from April 11, 2005 through February 15, 2006, a period of just ten months. Cmplt. ¶¶ 21, 35, 37. The Plaintiffs cannot claim that the duration lasted through March 7, 2008 when they claim to have first discovered the alleged bribe because concealing a predicate act does not extend the duration of the predicate act. Cmplt. ¶ 46; *Jennings*, 495 F.3d at 474.

The Complaint also fails by not alleging individual conduct by each defendant to show a pattern for each defendant. A plaintiff must allege how each person participated in the unlawful acts, and it is insufficient to group together all defendants. *Goren*, 156 F.3d at 726, 730 ("in a multiple defendant case, Rule 9(b) required a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme.").

For these reasons, we find that Plaintiffs' Complaint fails to adequately plead a pattern of racketeering activity.

**III.   Persons" are not shown to be distinct from the "enterprise"**

It is well-established that a RICO "person" must be distinct from the RICO "enterprise." *Haroco, Inc. v. American National Bank & Trust Co. of Chicago*, 747 F.2d 384, 400 (7th Cir. 1984). RICO prohibits defendant persons from conducting the affairs of an enterprise in a criminal or fraudulent manner. *Ewing v. Midland Fin. Co.,* 1997 WL 627644 (N.D.Ill. Sept. 26, 1997. Because the terms of RICO prohibit defendant persons from conducting the affairs of an enterprise in a criminal or fraudulent manner, the person must be a distinct and separate entity from the enterprise whose affairs it conducts. *Richmond,* 52 F.3d at 646. In order to satisfy the distinctness requirement, the RICO person must have committed the crime or fraud while conducting the enterprises' affairs, not merely its own business. *Id*. When a plaintiff seeks to

hold a group of RICO persons liable, and that group is identical to the group making up the alleged enterprise, the RICO claim fails because the persons are not distinct from the enterprise. *Brown,* 549 F. Supp. 2d 1030. In this case, the Plaintiffs allege that the Defendants are the RICO persons, as well as the enterprise. Cmplt. ¶¶ 48, 49, 54, 56. Based upon the allegations in the Complaint, Count I fails to sufficiently plead that the Defendants conducted or participated in the conduct of the enterprise.

## **CONCLUSION**

For the reasons set forth above, the motions of Defendants International Union of Operation Engineers, Local 150, AFL-CIO, Midwest Operating Engineers Pension Trust Fund, Midwest Operating Engineers Welfare Fund, Steven Cisco, Colin M. Darling, and Charles August to dismiss Count I of Plaintiffs' Complaint [## 29, 35, 41] are granted. The Court declines to exercise supplemental jurisdiction over Count II, the remaining state law claim, and hereby dismisses Count II without prejudice

It is so ordered.

                                                                                 _____
                                                                                  Wayne R. Andersen
                                                                                  United States District Court

Dated: July 21, 2009